NADINE H. WINNICK, an Infant, by Her Mother and Natural Guardian, THEDA WINNICK, et al., Respondents, *v.* KUPPERMAN CONSTRUCTION COMPANY, INC., Respondent, et al., Defendant, and ATLAS AUTO REPAIR SERVICE, INC., Appellant and Third-Party Plaintiff-Respondent. ALBERT WINNICK, Third-Party Defendant-Appellant.

Second Department, February 19, 1968.

*Henry Wolfman* (*Lewis I. Wolf* and *Edward R. Koudelka, Jr.,* of counsel), for Atlas Auto Repair Service, Inc., appellant.

*Di Fede & Martoccia* (*Arthur R. Martoccia* of counsel), for Albert Winnick, appellant.

*Mayer, Zeck & Prier* (*Robert W. Prier* of counsel), for Nadine H. Winnick and another, respondents.

*Cerrato, Nayor & Edmiston* (*M. Morton Edmiston, Jr.,* of counsel), for Kupperman Construction Company, Inc., respondent.

CHRIST, Acting P. J. The principal question presented is whether an owner of a motor vehicle which permitted its employee to use it may be held liable to an unemancipated infant child of the employee for the latter's negligence in the operation of the vehicle. The court below answered the question in the affirmative.

The third-party defendant, Albert Winnick, is the infant plaintiff's father and president of the owner, the defendant and third-party plaintiff Atlas Auto Repair Service, Inc. While he was operating a car owned by Atlas with its permission, his 15-year-old passenger daughter was injured due to his alleged negligence. They were traveling on a road in a real estate development, having visited a house being built there for their family. Defendants Kupperman Construction Co.,

Inc. and Ward Pavements, Inc. were the general contractor and the street paving contractor, respectively. The car went into a depression in the road and got caught on a raised manhole cover.

In the main action, the plaintiffs claim that the defendants Kupperman and Ward were negligent in maintaining the road and that Atlas is liable as owner of the automobile for the negligence of its operator, the infant's father. Since an unemancipated minor child has no right of action against a parent for nonwillful injuries (*Badigian* v. *Badigian,* 9 N Y 2d 472; *Sikora* v. *Keillor,* 17 A D 2d 6, affd. 13 N Y 2d 610; *Schomber* v. *Tait,* 207 Misc. 328), the infant plaintiff has not sued her father, but instead sued, among others, her father's employer, Atlas, which owned the car. Her mother has similarly claimed upon the derivative cause for medical expenses, etc. Atlas has claimed over against the father upon the ground that an owner of an automobile, held derivatively liable solely by reason of his ownership (Vehicle and Traffic Law, § 388), may claim over against the driver who is the active tort-feasor (*Naso* v. *Lafata,* 4 N Y 2d 585, 590; *Traub* v. *Dinzler,* 309 N. Y. 395).

Special Term held that the infant plaintiff's claim against Atlas is legally sufficient. Accordingly, it denied (1) Atlas' motion for summary judgment against plaintiffs and for dismissal of plaintiffs' complaint for insufficiency and (2) the father's cross motion for like relief and for dismissal of the third-party complaint. For the reasons that follow, we have concluded that the determination below was proper.

Subdivision 1 of section 388 of the Vehicle and Traffic Law (formerly § 59), upon which the plaintiffs rely, attributes to the owner of a motor vehicle the negligence of a person "in the use or operation of such vehicle, in the business of such owner *or otherwise,* by any person using or operating the same with the permission, express or implied, of such owner" (emphasis supplied). Atlas contends that it is not liable under this statute because its supposed liability would be derived from the infant plaintiff's father and the infant plaintiff cannot recover from her father, pursuant to the rule that an unemancipated infant child cannot maintain an action against his parent for negligence.

At common law, a person could not maintain an action against his or her spouse for personal injuries, whether negligent or willful — a rule based on the doctrine of the merger of their beings in the unity of marriage (*Schubert* v. *Schubert Wagon Co.,* 249 N. Y. 253, 255). Similarly, it was held that an action for personal injuries resulting from nonwillful negligence

may not be maintained by an unemancipated child against his parent, because to permit such an action would inject disruptive litigation into family unity (*Sorrentino* v. *Sorrentino,* 248 N. Y. 626 [1928]; *Cannon* v. *Cannon,* 287 N. Y. 425, 429 [1942]).

In 1928, in the leading case of *Schubert* v. *Schubert Wagon Co.* (*supra*), the Court of Appeals refused to extend the husband-wife immunity in an action arising out of a motor vehicle accident where the wife had elected to sue the husband's principal. There it was held that, under the common-law theory of *respondeat superior,* a wife could recover against her husband's employer for the negligent operation of the employer's vehicle by the husband while acting within the scope of his employment. The court held that the disability of the wife or husband to maintain an action against the other for injuries to the person was not a disability to maintain a like action against the other's principal or master. Chief Judge CARDOZO, writing for the court, stated (pp. 256–257): "The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity. A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act though the law exempts the husband from liability for the damage. Others may not hide behind the skirts of his immunity." The same principle was invoked where an infant was injured due to the negligence of a parent (*Sullivan* v. *Christiensen,* 191 N. Y. S. 2d 625; *Schomber* v. *Tait,* 207 Misc. 328, *supra*).

In *Badigian* v. *Badigian* (9 N Y 2d 472, *supra*), a mother on behalf of her three-year-old child *sued the child's father* for personal injuries. It was alleged that the father had left the family car unlocked in a parking lot and the child had released the brakes and become hurt in trying to jump from the vehicle. In affirming a dismissal of the complaint for insufficiency, the Court of Appeals held that an unemancipated minor child had no right of action *against his parent* for nonwillful injuries. Contending that numerous exceptions and qualifications over the years have eroded the doctrine of immunity and that this principle has become unsuitable in our times, Judge FULD wrote a comprehensive dissent, in which he observed, *inter alia* (p. 477): "In addition, a child may actually, albeit indirectly, obtain redress from his parent for personal injuries resulting from an automobile accident if the

child can find and sue a third person who in turn transfers his liability to the parent. A common case of this sort is one in which the father inflicts the injury while driving a vehicle in the course of his employment. The child recovers from his father's employer and thereupon the latter obtains indemnity from the father in the full amount of the child's recovery [citing cases] ".

While the majority in *Badigian* (*supra*) was not persuaded that the doctrine of parental immunity should be totally abolished outright, its holding is not contrary to the statement by Judge FULD just quoted.

The weight of authority in other jurisdictions is in accord with the rule that a spouse or infant child of a driver of a vehicle may recover against the driver's employer for the driver's negligent operation of the vehicle while acting within the scope of his employment (Ann. 1 ALR 3d 677; see, also, Restatement, Agency 2d, § 217, comment *b*).

Under the doctrine of *respondeat superior* alone, an employer would be subject to liability only when his vehicle is used in the course of his business (*Mergentime* v. *New England Tel. & Tel. Co.*, 255 App. Div. 628, affd. 281 N. Y. 739; *Cherwien* v. *Geiter*, 272 N. Y. 165, 168). In the present case it appears that the car was not thus employed, for it is undisputed that the infant plaintiff and her father were on a visit to a house being built for their family. However, the owner's liability herein may be predicated upon section 388 of the Vehicle and Traffic Law, because the statute has rendered an owner liable irrespective of whether or not his car is used in further-ance of his business (*Gochee* v. *Wagner*, 257 N. Y. 344, 347; *Kemp* v. *Rockland Leasing*, 51 Misc 2d 1073).

Accordingly, the statutory obligation imposed by section 388 and the personal and exclusive quality of the immunity enjoyed by a parent in actions brought by a child require that the owner here, Atlas, be held answerable in this negligence action. It follows that Atlas, as an owner held derivatively liable solely by reason of its ownership, may claim over against the driver-parent, who is the active tort-feasor (*Naso* v. *Lafata*, 4 N Y 2d 585, 590, *supra; Traub* v. *Dinzler*, 309 N. Y. 395, *supra*).

The appellant father argues that inasmuch as he is required to be an insured under the auto liability policy held by Atlas, the attorneys appointed for Atlas by its carrier should not be permitted to assert a third-party action against him. However, he concedes that the amount sued for herein exceeds the amount of the coverage of Atlas' policy and the court below expressed

the view that in the circumstances no dismissal can be had until the extent of the plaintiffs' recovery can be compared with the insurance coverage available. Atlas argues that whether the owner and operator are covered by automobile liability insurance is in no way pertinent to the issue of liability herein; and, since neither the policy nor the carrier is before the court, any construction of the policy would not be binding on the carrier.

We agree with the Special Term that it is premature at this point to attempt to resolve, on the basis of available insurance coverage, the question whether Atlas is entitled to any indemnity by Winnick (see *Beck* v. *Renahan,* 46 Misc 2d 252, 255). It follows that the cross motion by the third-party defendant to dismiss the third-party complaint was properly denied.

Finally, Atlas argues that *the mother* is not entitled to sue for loss of services and medical expenses because the father furnished the infant plaintiff "with her food, clothing, shelter and education." However, in her verified complaint the mother alleged: "That by reason of the foregoing [accident], plaintiff, Theda Winnick [the mother] * * * has been caused to expend * * * great sums of money in an effort to have her said child cured of her injuries".

At common law the father, upon whom rested the primary obligation for the support of his minor children (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460; *Young* v. *Valentine,* 177 N. Y. 347), originally had the exclusive right to their services and to bring suit for damages occasioned by interference with that right (*Pokeda* v. *Nash,* 47 N. Y. S. 2d 954; *Doyle* v. *Rochester. Times-Union,* 232 App. Div. 878). However, the mother had a secondary liability if the father failed to discharge his primary duty (*Anonymous* v. *Anonymous,* 173 Misc. 679, 680) and "Even under the common law it has been held that during the lifetime of the father the mother might be entitled to bring an action for loss of services of an infant child where she shows facts entitling her to the services of the infant. * * * The modern tendency even at common law is to treat the mother's right with considerable favor. (Schouler Marr. Div. Sep. & Dom. Rel. [6th ed.], § 753, pp. 815, 816.) " (*Hagopian* v. *Samuelson,* 236 App. Div. 491, 492.)

Section 81 of the Domestic Relations Law, which provides in pertinent part that "a married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them", has changed the common-law rule, so that upon proper facts being shown the mother of

an infant may maintain an action for medical expenses and loss of services of a child even though the father be living (*Pokeda v. Nash, supra,* p. 957; *Hagopian* v. *Samuelson, supra,* p. 492; cf. *Picus* v. *Briglia,* 11 A D 2d 925). It is true, in the case at bar, that the complaint does not directly allege that the father has failed or refused to support the infant plaintiff or to pay for her medical expenses. However, such an omission has been held not to be critical (*Pokeda* v. *Nash, supra*). In the present case, under the allegations of her cause of action, the plaintiff mother may show that she has expended money for medical services, medicines, nursing care and hospital bills; that the husband has not contributed anything for the treatment of the injuries sustained; and that he has waived his right to the earnings of the infant in favor of his wife. Atlas may demand a bill of particulars as to the nature and extent in detail of the role of each of the parents in the premises, which will be supplemental to the complaint. Under the foregoing, the complaint, as respects the mother's cause of action, is sufficient.

Accordingly, the order appealed from should be affirmed, with one bill of $10 costs and disbursements payable jointly by the appellants to the plaintiffs-respondents.

BRENNAN, RABIN, HOPKINS and MUNDER, JJ., concur.

Order of the Supreme Court, Rockland County, entered April 26, 1967, affirmed, with one bill of $10 costs and disbursements payable jointly by appellants to plaintiffs-respondents.