Lavertis Porter HOOPER, a minor, By and Through his mother and next friend, Nann HOOPER and Nann Hooper individually, Appellants,

v.

CLEMENTS FOOD COMPANY, an Oklahoma corporation, Appellee.

No. 59184.

Supreme Court of Oklahoma.

Jan. 22, 1985.

**944**

Buck, Merritt & Hoyt by Michael T. Rooney, Oklahoma City, for appellants.

Stewart & Elder by Bruce V. Winston, Oklahoma City, for appellee.

ALMA WILSON, Justice.

This suit was brought on behalf of a minor child against the employer of the child's father. The child's mother, as next friend and individually, sought to recover damages for injuries suffered by the child by reason of the father's negligence occurring in the course and scope of employment. The trial court found the doctrine of parental immunity shielded the employer from any liability to the child. We find the parental immunity exception to tort liability inapplicable to the facts of the instant case and reverse.

The undisputed facts of this case establish that on August 20, 1981, the minor appellant's father was the agent and employee of the appellee, Clements Food Company. On that day, the child accompanied his father as a passenger in a company owned truck driven by his father in the course and scope of employment. The company truck collided with another vehicle when Clements' employee and agent, the child's father, negligently attempted to pass the vehicle. The child sustained severe injuries in this accident.

Clements' liability for the child's injuries was predicated upon principles of respondeat superior. The fact that the injuries of the child proximately resulted from the negligence of Clements' employee while engaged in the course and scope of employment was never in dispute. The doctrine of parental immunity constituted the sole defense of the employer, Clements Food Company.

On motion for summary judgment, Clements maintained that its liability to the child is purely derivative and flows solely from the liability of its employee. Therefore, Clements further maintained, its employee's parental immunity precluded any recovery against it by the child. Essentially, Clements argued that inasmuch as recovery is personally precluded against the negligent employee, recovery must also be precluded against the employer. The trial court agreed and sustained Clements' motion for summary judgment.

 In this Court's recent decision of *Unah v. Martin,* 676 P.2d 1366 (Okl.1984), we qualified the rule of parental immunity in vehicular negligence cases to allow an action for negligence arising from an automobile accident brought on behalf of an unemancipated child against a parent to the extent of the parent's automobile liability insurance. In the instant case, the child is thus not precluded from *all* recovery against his father as Clements contends. Moreover, the child has no personal incapacity to maintain an action against his father's employer. Principles of respondeat superior permit an action against the principal alone, although no legal action is taken against the agent. *Employers Casualty Co. v. Barnett,* 205 Okl. 73, 235 P.2d 685 (1951). The precise question before us, then, concerns the extent to which a child may recover from a parent's employer for an injury caused by the negligence of his parent while acting within the course and scope of employment. We hold the child's recovery is not limited by our ruling in *Unah v. Martin, supra.* A parent's employer is not protected by the *Unah* ceiling on parental liability, which is designed to preserve family unity.

 Generally, courts in this country hold that an employer is liable for the torts of its employee occurring in the course and scope of employment, although the employee is personally immune from suit.[1] A majority of jurisdictions also subscribe to the holding that the immunity of a parent is a personal immunity, and it does not, therefore, protect a third party who is lia-

---

1. *See, W. Prosser, Handbook of the Law of Torts,* § 122 (4th ed. 1971). *Also see,* Am.Jur.2d *Master and Servant,* § 405 (1970); 59 Am.Jur.2d *Parent and Child,* § 162 (1971); 57 C.J.S. *Master and Servant,* § 569 (1948); 77 C.J.S. *Respondeat Superior* (1952); Annot., 1 A.L.R.3d 677 (1965).

ble for the tort.[2] Today, we adopt this majority view. An unemancipated minor child may fully recover damages from the employer of the child's parent when the parent's negligence, proximately causing the injury to the child, occurred in the course and scope of the parent's employment.

■ Our pronouncement today allowing an injured child full recovery from his parent's employer follows from the premise that the partial immunity of a parent from suit by his minor child in vehicular negligence cases is personal. An employer may not rely upon the personal immunity of its parent-employee. The origin and public policy justifications behind the judicially created parental immunity exception to tort liability compel this conclusion.

In *Unah v. Martin, supra,* we traced the origin of parental immunity in American jurisdictions to a single case, *Hewellette v. George,* 68 Miss. 703, 9 So. 885 (1891), where the Supreme Court of Mississippi sought to protect "the repose of families and the best interests of society" by forbidding minor children to assert claims for personal injuries suffered at the hands of the parent. We noted that this domestic tranquility rationale remains the policy argument most frequently offered in support of parental immunity.[3] The policy justifications for the adoption and proliferation of the court-made rule of parental immunity, intimately examined in *Unah,* provide no basis for disallowing an injured minor child full recovery from an employer for injuries proximately caused by a parent-employee's negligence committed in doing the employer's business. The sought after litigation is not between child and parent, but between child and parent's employer.

■ Our holding today is also consistent with accepted principles of respondeat superior. Respondeat superior involves the rights of third parties where a master and servant or principal and agent relationship exists. *Texaco, Inc. v. Layton,* 395 P.2d 393, 396 (Okl.1964). Under respondeat superior, the *negligence* or *wrongful act,* as opposed to the civil liability of the servant, is imputed to the master. Thus, a finding of no negligence on the part of the servant, conclusively negates the liability of the master. *Missouri, Kansas & Texas Railroad Co. v. Stanley,* 372 P.2d 852, 857 (Okl.1962); *Consolidated Gas Utilities Co. v. Beatie,* 167 Okl. 71, 27 P.2d 813 (1933). However, a finding of no civil liability on the part of the servant does not necessarily negate the liability of the master. It is the servant's negligence or *wrongful act* which *establishes* the master's *liability,* not the servant's own civil liability. Therefore, the servant's status in relation to the injured person is not determinative.

■ In this jurisdiction, an employer is neither partially nor completely shielded from liability for the negligent act of his employee done in his service, by a doctrine based solely upon preserving the family relationship. Parties outside the family relationship may not invoke the purely personal immunity created by the doctrine.

Whether the employer, Clements Food Company, may invoke the right of indemnity against its employee, the child's father, is not presented for determination in this appeal. Employer Clements has not re-

---

2. *See,* e.g., *Mi-Lady Cleaners v. McDaniel,* 235 Ala. 469, 179 So. 908 (1938); *Chase v. New Haven Waste Material Corp.,* 111 Conn. 377, 150 A. 107 (1930); *O'Connor v. Benson Coal Co.,* 301 Mass. 145, 16 N.E.2d 636 (1938); *Wright v. Wright,* 229 N.C. 503, 50 S.E.2d 540 (1948); *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971); *Worrell v. Worrell,* 174 Va. 11, 4 S.E.2d 343 (1939); *Stapleton v. Stapleton,* 85 Ga.App. 728, 70 S.E.2d 156 (1952); *Radelicki v. Travis,* 39 N.J.Super. 263, 120 A.2d 774 (1956); *Schamber v. Tait,* 207 Misc. 328, 140 N.Y.S.2d 746 (1955).

3. Courts applying the parental immunity doctrine have traditionally relied upon several policy reasons for upholding the doctrine. In *Unah,* we identified and examined the five most frequently cited justifications; (1) disturbance of domestic harmony and tranquility; (2) interference with parental care, discipline, and control; (3) depletion of family assets in favor of the claimant at the expense of other children in the family; (4) the possibility of inheritance by the parent of the amount received in damages by the child; and (5) the danger of fraud and collusion between parent and child.

quested indemnity from its employee. Inasmuch as an employer's recovery over against a parent-employee is not based upon a continuation of the original domestic claim, but upon the parent-employee's independent duty of care for the protection of the employer's interests, the extent of indemnity, if any, must await future determination. In that case if protection of the employee is still the sine qua non, it can always be accomplished merely by denying the indemnity.[4]

The decision of the trial court granting summary judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

DOOLIN, V.C.J., and HODGES, LAVENDER and KAUGER, JJ., concur.

OPALA, J., concurs in judgement.

SIMMS, C.J., and BARNES and HARGRAVE, JJ., dissent.

---

**4.** The question of indemnity in an identical context was considered in *Littleton v. Jordan,* 428 S.W.2d 472 (Tex.App.1968). The Texas Court of Civil Appeals likewise upheld the majority rule expressed herein, but declined to reach the question of indemnity in the absence of a pleading defining the issue. Quoting Prosser, The Law of Torts, § 116 (1964), the Court at 474 stated:

(p. 890) "In the jurisdictions which deny the action where only members of the family are concerned, further dispute has arisen as to the liability of third parties. * * * [A]s to liability which is purely vicarious, such as that of an employer of a—father for injury to—[the employee's] child, the courts were for a long time divided. The older, but now almost entirely obsolete view denied recovery in such a case, arguing first that since the master's liability is founded on the servant's tort, he should not be liable where the servant is not; and second, that the master's right of indemnity against the servant would circumvent the domestic immunity, and defeat it by throwing the ultimate loss upon the servant. The first argument confuses immunity from suit with lack of responsibility—the servant has committed a tort which by ordinary rules of law should make the master liable, and there is no reason to include the latter within the purely personal immunity of the family. The second misses the point that the master's recovery over against the servant is not based upon any continuation of the original domestic claim, but upon the servant's independent duty of care for the protection of the master's interests; and that if protection of the servant is still the sine qua non, it can always be accomplished merely by denying the indemnity."